# EXHBIT C

## Documents Filed in State Court

Case 2:14-cv-01884-KJM-CKD   Document 1-3   Filed 01/02/14   Page 2 of 15

Filed
13 November 1 P3:37
Gary Fitzsimmons
District Clerk
Dallas District

Cause No. DC-13-13154

| | | |
|---|---|---|
| COPART, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| SPARTA CONSULTING, INC., | § | |
| | § | |
| Defendant. | § | B-44TH  JUDICIAL DISTRICT |

## ORIGINAL PETITION

Plaintiff Copart, Inc. complains of Defendant Sparta Consulting, Inc. as follows:

### I.  NEED FOR ACTION

1. By this action Copart, a Texas-based company located in Dallas County, seeks both to rebut unfounded claims by Sparta Consulting, Inc. ("Sparta") in which Sparta demands payment for its faulty and incomplete services rendered to Copart and to redress Sparta's false promises, poor and incomplete work, and unfair business practices.

### II.  DISCOVERY CONTROL PLAN

2. Copart intends to conduct discovery under Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

### III.  PARTIES

3. Copart is a corporation formed under the laws of the state of Delaware. Copart maintains its headquarters in Dallas County, Texas, and conducts business in the State of Texas.

4. Sparta is a corporation formed under the laws of the state of California. Sparta maintains its headquarters in California. Sparta conducts business and has two offices in the state of Texas. Sparta can be served through the Secretary of State of Texas because Sparta has not designated or maintained a resident agent for service of process in Texas. *See* Tex. Bus. Org.

Code § 5.251; Civ. Prac. & Rem. Code § 17.044. Sparta's corporate headquarters is located at 111 Woodmere Road, Suite 200, Folsom, California 95630.

## IV.   JURISDICTION AND VENUE

5.   This Court has subject matter jurisdiction over this matter because the amount in controversy falls within the Court's jurisdictional limits.

6.   This Court may exercise jurisdiction over Sparta. Sparta maintains two offices in Texas and conducts business in Texas. Sparta committed many of the acts and omissions relating to these claims in Texas. Sparta, in the conduct of its business activities, has purposefully availed itself of the benefits and protections offered by the state of Texas.

7.   This Court is the proper venue because a substantial part of the events or omissions giving rise to the claim occurred in Dallas County. *See* Civ. Prac. & Rem. Code § 15.002(a)(1).

## V.   FACTS

8.   Copart is a leading provider of online vehicle auctions and remarketing services. Copart provides vehicle sellers with a full range of services to process and sell vehicles primarily over the Internet using online auctions. To help manage its business, Copart employs an enterprise resource planning system that it developed internally and referred to as CAS.

9.   Sparta is an IT consulting company that offers advisory services for the implementation of enterprise application software.

10.   Before entering into a contract, Sparta made representations and promises to Copart about Sparta's abilities to render desired services and achieve necessary goals. For example, Sparta told Copart that Sparta would be able to recreate, in SAP format, 100% of the CAS functionality. But Sparta made these promises and representations with no intention to perform; while Sparta represented that it could perform and possessed the requisite skill,

experience, and knowledge, Sparta, in fact, did not possess these attributes, did not know if it could perform, and/or knew that it could not perform.

11. On October 6, 2011, Copart and Sparta entered into the Implementation Services Agreement ("the Agreement"), under which Sparta agreed to provide services to Copart related to SAP Software and other software licensed by Copart. According to its terms, the Agreement is governed and construed in accordance with the laws of California. Implementation Services Agreement, § 19.14.

12. On October 6, 2011, Sparta and Copart agreed to a statement of work related to the design of the new enterprise resource planning system (the "Design SOW"). The Design SOW referred to the Agreement and specified the scope of the project and services expected from Sparta. In particular, in the Design SOW, Sparta promised to design "a solution utilizing SAP Software to replace 100% of the CAS Functionalities" and to integrate the solution with other software components." The Design SOW also called for Sparta to "[p]repare a comprehensive and detailed plan for the implementation, testing, training, and deployment of the New Solution."

13. The Design SOW established a Milestone Schedule for Sparta's work. The schedule set forth three Milestones, the completion date for each Milestone, and the fees associated with each Milestone. Sparta completed the design phase Milestones, and Copart paid Sparta for the three Milestones. In addition, the parties agreed to a fourth Milestone and "bridge" on the project. For all of this, Copart paid $5,100,000. The end result of that work was the Sparta-created design for the SAP-based system (the "AIMOS Design") to replace CAS.

14. After the design was completed, Copart put out to bid the work to realize (i.e., build and deploy) the AIMOS Design. During the bidding process and before entering into any

further agreements, Sparta made representations and promises to Copart about Sparta's abilities to render desired services and achieve necessary goals. For example, Sparta told Copart that Sparta would be able to build and deploy, in SAP format, an enterprise resource planning system pursuant to AIMOS Design with 100% of the CAS functionality. But Sparta made these promises and representations with no intention to perform; while Sparta represented that it could perform and possessed the requisite skill, experience, and knowledge, Sparta, in fact, did not possess these attributes, did not know if it could perform, and/or knew that it could not perform.

15. On March 28, 2012, the parties entered into a statement of work for the realization (i.e., building and deployment) of the AIMOS Design (the "Realization SOW"). As before, the Realization SOW referred to the Agreement and specified the scope of the project and services expected from Sparta. Sparta promised "to complete the build of the collective output of the AIMOS Design." And the Realization SOW confirmed that the AIMOS Design "was based upon the replacement of 100% of existing CAS . . . functionalities." The Realization SOW addressed requirements for configuration, development, deployment, testing, approval, and cut over. And the Realization SOW set a development strategy, based on geographical regions, for deployment of the AIMOS Design.

16. The Realization SOW also established a Milestone Schedule for Sparta's work. The schedule set eleven Milestones (Milestone #5 to Milestone #14 & #15), the completion date for each Milestone, and the fees associated with each Milestone. Both the Agreement and the Realization SOW made it clear that Copart would pay for a Milestone only after that particular Milestone had been completed by Sparta and approved by Copart.

17. From the start, Sparta performed its services poorly. Sparta missed schedules, its software failed tests, and the project foundered. All the while, Sparta assured Copart that Sparta

would be able to recreate, in SAP format, 100% of the CAS functionality. On that basis, Copart paid $5,440,000 for Sparta's work on Milestones #5 to #7.

18.     Sparta's work on Milestone #8 was so poor and untimely that Copart required Sparta to develop plans to resurrect the project. In connection with those discussions, Sparta again made representations and promises to Copart about Sparta's abilities to render desired services and achieve necessary goals. For example, Sparta assured Copart that Sparta would be able to recreate, in SAP format, 100% of the CAS functionality. But Sparta made these promises and representations with no intention to perform; while Sparta represented that it could perform and possessed the requisite skill, experience, and knowledge, Sparta, in fact, did not possess these attributes, did not know if it could perform, and/or knew that it could not perform.

19.     On August 16, 2013, the parties entered into an Amendment to the Agreement ("the Amendment"), which revamped the Milestone goals and schedule. The Amendment restated in detail the purpose of Milestone #8 and set out the expected deliverables. The Amendment also reset the schedule for the remaining Milestones.

20.     Sparta continued to perform poorly after the Amendment. But it continued to make representations and promises to Copart about Sparta's abilities to render desired services and achieve necessary goals. For example, Sparta reassured Copart that Sparta would be able to recreate, in SAP format, 100% of the CAS functionality. But Sparta made these promises and representations with no intention to perform; while Sparta represented that it could perform and possessed the requisite skill, experience, and knowledge, Sparta, in fact, did not possess these attributes, did not know if it could perform, and/or knew that it could not perform.

21.     As the first deadlines approached on the Amendment's revised timetable, it became evident that Sparta would miss its target. Copart had no alternative than to terminate the Agreement because it could not tolerate more of Sparta's poor and untimely performance.

22.     On September 17, 2013, Copart provided written notice to Sparta that Copart was terminating the Agreement pursuant to Section 15.2. That section allows Copart to terminate the Agreement for convenience and provides that, in the event of termination, "Copart shall pay [Sparta] only for the portion of the Services that have been performed and completed as of the termination date, as such portion agreed by Copart and calculated and documented by [Sparta's] project management software system." Implementation Services Agreement, § 15.2. In the termination letter, Copart invited a discourse on which services, if any, Sparta believed it had performed, completed, and documented in order to evaluate whether Copart would agree—as is Copart's right under Section 15.2 of the agreement—with Sparta's view.

23.     On October 18, 2013, Sparta responded and asserted that it was "entitled to at least 100% of the outstanding contract price," which it pegged at $14,190,000. Adding in a certain amount for expenses, Sparta made a demand of $12,200,835.72 as the minimum amount to which it was entitled under Section 15.2. Copart does not agree with Sparta's assessment of the portion of the services that have been performed and completed. Nor does the relevant documentation support such a claim.

24.     Under Section 15.2, Sparta is not entitled to any payment upon termination unless it has both proper documentation and Copart's agreement. But it has neither.

25.     Since Copart's termination of Sparta's services, Copart has begun taking steps to repair the errors and complete the project that Sparta failed to perform timely and correctly. Copart has incurred and will continue to incur significant expenses as a direct result of Sparta's

failures in the project. Further, Copart has suffered business injury related to the delay in the project and the implementation of a functioning enterprise resource planning system, in SAP format, with 100% of the CAS functionality. These expenses and injuries are a direct consequence of Sparta's actions as set out above.

## VI.     CONDITIONS PRECEDENT

26.     All conditions precedent to Copart's claim for relief have been performed or have occurred.

## VII.    CLAIMS

**Claim 1—Fraud, Fraudulent Inducement, and/or Promissory Fraud**

27.     Copart incorporates herein all of the preceding paragraphs.

28.     Sparta fraudulently misrepresented material facts to and concealed material facts from Copart.

29.     Sparta fraudulently induced Copart to enter into the Agreement, the Realization SOW, and the Amendment by misrepresenting, concealing, and/or failing to disclose material facts, including that Sparta did not have the ability to perform the services contemplated by Copart and that Sparta had no present intention to perform the services as represented. In particular, Sparta knew or had reason to know that it lacked the ability to recreate, in SAP format, 100% of the CAS functionality. While Sparta represented that it could perform and possessed the requisite skill, experience, and knowledge, Sparta, in fact, did not possess these attributes, did not know if it could perform, and/or knew that it could not perform.

30.     Sparta concealed these material facts from, and made these material representations, to Copart with knowledge that the representations were false when made, or without sufficient knowledge on the subject to warrant a representation, and with the intent that

Copart would act on them. Copart reasonably relied on these material misrepresentations and omissions in executing the Agreement, the Realization SOW, and the Amendment.

31.     The Agreement, the Realization SOW, and the Amendment do not contain any clause in which Copart waives reliance on the representations made by Sparta because, in fact, Copart was relying on them.

32.     Sparta promised to perform its obligations under the Agreement, the Realization SOW, and the Amendment with no intention of living up to its promise and thereby fraudulently induced Copart to enter into the Agreement, the Realization SOW, and the Amendment. By making false promises, Sparta intended to and did induce Copart to execute the Agreement, the Realization SOW, and the Amendment when in fact Sparta had neither a present intention of honoring nor an ability to honor its promises. While Sparta represented that it could perform and possessed the requisite skill, experience, and knowledge, Sparta, in fact, did not possess these attributes, did not know if it could perform, and/or knew that it could not perform.

33.     Had Sparta not engaged in these actions, Copart would not have retained Sparta for its services and, instead, would have obtained services from another consulting company. Further, Copart would have terminated Sparta earlier and saved millions of dollars in fees Copart paid to Sparta.

34.     As a direct and proximate result of Sparta's material misrepresentations and omissions, Copart suffered damages.

35.     As a direct and proximate result of Sparta's material misrepresentations and omissions, Sparta wrongfully profited at Copart's expense.

36.     Sparta acted with malice and acted knowingly and intentionally. Accordingly, Copart also seeks, and is entitled to, exemplary damages.

Original Petition                                                                                                                Page 8
2929281v1/013937

**Claim 2— Negligent Misrepresentation**

37. Copart incorporates herein all of the preceding paragraphs.

38. Based on incorrect misrepresentations Sparta made after Copart entered into the Agreement, the Realization SOW, and the Amendment, Copart refrained from exercising rights under the Agreement, which it otherwise would have exercised. For example, because of Sparta's misrepresentations Copart did not terminate the Agreement when Sparta encountered significant problems performing its obligations of the project; instead, Copart agreed to the Realization SOW and the Amendment based on those misrepresentations.

39. Sparta made statements about its ability and intent to perform its obligations under the Agreement, the Realization SOW, and the Amendment without reasonable grounds for such belief. Copart justifiably relied on Sparta's statements about its ability and intent to perform its obligations under the Agreement, the Realization SOW, and the Amendment. And Copart's reliance on Sparta's misrepresentations caused Copart to suffer significant harm.

**Claim 3—Unfair Business Practices (California Business and Professions Code § 17200)**

40. Copart incorporates herein all of the preceding paragraphs.

41. Sparta's conduct offends established public policy. Its practices are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, including Copart.

42. The unfair nature of Sparta's conduct and the harm caused by its conduct outweighs any benefits that the conduct may have. For example, Sparta holds itself out as "a proven enterprise technology and consulting leader specializing in serving clients in the end-to-end SAP application landscape" and claims that it "provides a comprehensive understanding of the core processes, industry expertise, best practices, trends, strategic advice, and deep solution expertise needed to navigate through the cycle of selecting, planning, implementing, upgrading, extending, or migrating to new ERP business solutions." But Sparta does not have such abilities.

Given the manner and substance of Sparta's public representations, the public is likely to be misled by Sparta's unlawful, unfair, and deceptive business practices.

43. Despite Sparta's promises in general and its specific promise to Copart to deliver an enterprise resource planning system, in SAP format, with 100% of the CAS functionality pursuant to the AIMOS Design it created, Sparta lacked the capabilities to perform as promised, failed completely, and collected millions of dollars in payment (while now demanding millions more), for obligations it lacked both the ability and the willingness to perform.

44. As set out in detail above, Sparta's actions violate multiple California statutes including California Civil Code section 1572 (fraudulent inducement), California Civil Code section 1710(4) (promissory fraud), California Civil Code section 1710(1) (fraud), and California Civil Code section 1710(2) (negligent misrepresentation). As a result, Sparta has committed unlawful, unfair, and deceptive business practices.

45. By virtue of Sparta's actions, Copart may recover restitution from Sparta, including disgorgement, for Sparta's ill-gotten profits. *See* Cal. Bus. & Prof. Code § 17200, *et seq*.

**Claim 4—Breach of contract**

46. Copart incorporates herein all of the preceding paragraphs.

47. The Agreement, the Realization SOW, and the Amendment are valid, enforceable contracts.

48. Copart is the proper party to sue to enforce the terms of the Agreement, the Realization SOW, and the Amendment. Copart has performed, or has substantially performed, any and all necessary conditions precedent, dependent obligations, and/or dependent covenants owed under the Agreement, the Realization SOW, and the Amendment. Copart is, and has been,

entitled to Sparta's performance of its obligations under the Agreement, the Realization SOW, and the Amendment.

49.  Sparta has materially breached its contractual obligations to Copart, including the express terms set out above and/or implied covenant within Agreement, the Realization SOW, and the Amendment as described above.

50.  Copart has suffered significant injury resulting directly from Sparta's breach of the Agreement, the Realization SOW, and the Amendment.

**Claim 5—Declaratory relief**

51.  Copart incorporates herein all of the preceding paragraphs.

52.  This dispute involves a justiciable controversy about the rights and status of the parties. The controversy is real and substantial and involves a genuine conflict of tangible interests and is not merely a theoretical dispute.

53.  Copart seeks a declaration that Copart does not owe Sparta any amount for services rendered pursuant to the Agreement, the Amendment, and the Realization SOW.

**Count 6—Attorney's fees**

54.  Copart incorporates herein all of the preceding paragraphs.

55.  As a result of Sparta's actions and the need to protect its interests, Copart has retained the law firm of Susman Godfrey LLP to represent Copart in this action. Copart has agreed to pay the law firm of Susman Godfrey LLP's fees for its services.

56.  Copart seeks recovery of all reasonable and necessary attorney's fees and expenses pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code.

### VIII. JURY DEMAND

57.  Copart demands a jury trial and tenders the appropriate fee with this petition.

## IX.   REQUEST FOR DISCLOSURE

58.   Under Texas Rule of Civil Procedure 194, Copart requests that Sparta disclose, within 30 days of service of this request, the information or material described in Rule 194.2.

## X.   PRAYER FOR RELIEF

59.   Copart prays that Sparta be cited to appear and answer herein and that, upon a final hearing or trial, Copart has and recover judgment from Sparta as follows:

   a.   Compensatory and exemplary damages against Sparta in an amount to be determined at trial, whether resulting from fraud, negligent misrepresentation, and/or breach of contract;

   b.   Disgorgement of all amounts paid to Sparta by Copart under the Realization SOW;

   c.   A declaration as described above;

   d.   Reasonable and necessary attorneys' fees;

   e.   Pre- and post-judgment interest as the maximum rate allowed by law;

   f.   All costs of suit; and

   g.   All such other and further relief, both general and special, at law or in equity, to which Copart may show itself justly to be entitled.

Dated: November 1, 2013.

Case 2:14-cv-01884-KJM-CKD   Document 1-3   Filed 01/02/14   Page 14 of 15


Respectfully submitted,

*/s/ D.H. Charest*

Ophelia Camina
State Bar No. 03681500
Daniel H. Charest
State Bar No. 24057803
Warren T. Burns
State Bar No. 24053119
Omar Ochoa
State Bar No. 24079813
SUSMAN GODFREY LLP
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214) 754-1933
ocamina@susmangodfrey.com
dcharest@susmangodfrey.com
wburns@susmangodfrey.com
oochoa@susmangodfrey.com

Attorneys for Plaintiff Copart, Inc.

# CIVIL CASE INFORMATION SHEET

**CAUSE NUMBER** *(FOR CLERK USE ONLY)*: _____   **COURT** *(FOR CLERK USE ONLY)*: _____

**STYLED** Copart, Inc. v. Sparta Consulting, Inc.
(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

### 1. Contact information for person completing case information sheet:

| Name: | Email: |
|---|---|
| Daniel H. Charest | dcharest@susmangodfrey.com |
| Address: | Telephone: |
| 901 Main Street, Suite 5100 | 214-754-1900 |
| City/State/Zip: | Fax: |
| Dallas/Texas/75202 | 214-754-1933 |
| Signature: | State Bar No: |
| /s/ Daniel H. Charest | |

**Names of parties in case:**
Plaintiff(s)/Petitioner(s): Copart, Inc.
Defendant(s)/Respondent(s): Sparta Consulting, Inc.
[Attach additional page as necessary to list all parties]

**Person or entity completing sheet is:**
[X] Attorney for Plaintiff/Petitioner
[ ] *Pro Se* Plaintiff/Petitioner
[ ] Title IV-D Agency
[ ] Other: _____

Additional Parties in Child Support Case:
Custodial Parent:
Non-Custodial Parent:
Presumed Father:

### 2. Indicate case type, or identify the most important issue in the case (select only 1):

*Civil*

**Contract**
*Debt/Contract*
[ ] Consumer/DTPA
[ ] Debt/Contract
[X] Fraud/Misrepresentation
[ ] Other Debt/Contract: _____
*Foreclosure*
[ ] Home Equity—Expedited
[ ] Other Foreclosure
[ ] Franchise
[ ] Insurance
[ ] Landlord/Tenant
[ ] Non-Competition
[ ] Partnership
[ ] Other Contract: _____

**Injury or Damage**
[ ] Assault/Battery
[ ] Construction
[ ] Defamation
*Malpractice*
 [ ] Accounting
 [ ] Legal
 [ ] Medical
 [ ] Other Professional Liability: _____
[ ] Motor Vehicle Accident
[ ] Premises
*Product Liability*
 [ ] Asbestos/Silica
 [ ] Other Product Liability
  List Product: _____
[ ] Other Injury or Damage: _____

**Real Property**
[ ] Eminent Domain/Condemnation
[ ] Partition
[ ] Quiet Title
[ ] Trespass to Try Title
[ ] Other Property: _____

**Related to Criminal Matters**
[ ] Expunction
[ ] Judgment Nisi
[ ] Non-Disclosure
[ ] Seizure/Forfeiture
[ ] Writ of Habeas Corpus— Pre-indictment
[ ] Other: _____

**Employment**
[ ] Discrimination
[ ] Retaliation
[ ] Termination
[ ] Workers' Compensation
[ ] Other Employment: _____

**Other Civil**
[ ] Administrative Appeal
[ ] Antitrust/Unfair Competition
[ ] Code Violations
[ ] Foreign Judgment
[ ] Intellectual Property
[ ] Lawyer Discipline
[ ] Perpetuate Testimony
[ ] Securities/Stock
[ ] Tortious Interference
[ ] Other: _____

*Family Law*

**Marriage Relationship**
[ ] Annulment
[ ] Declare Marriage Void
*Divorce*
[ ] With Children
[ ] No Children

**Post-judgment Actions (non-Title IV-D)**
[ ] Enforcement
[ ] Modification—Custody
[ ] Modification—Other

**Title IV-D**
[ ] Enforcement/Modification
[ ] Paternity
[ ] Reciprocals (UIFSA)
[ ] Support Order

**Other Family Law**
[ ] Enforce Foreign Judgment
[ ] Habeas Corpus
[ ] Name Change
[ ] Protective Order
[ ] Removal of Disabilities of Minority
[ ] Other: _____

**Parent-Child Relationship**
[ ] Adoption/Adoption with Termination
[ ] Child Protection
[ ] Child Support
[ ] Custody or Visitation
[ ] Gestational Parenting
[ ] Grandparent Access
[ ] Parentage/Paternity
[ ] Termination of Parental Rights
[ ] Other Parent-Child: _____

**Tax**
[ ] Tax Appraisal
[ ] Tax Delinquency
[ ] Other Tax

*Probate & Mental Health*
*Probate/Wills/Intestate Administration*
[ ] Dependent Administration
[ ] Independent Administration
[ ] Other Estate Proceedings

[ ] Guardianship—Adult
[ ] Guardianship—Minor
[ ] Mental Health
[ ] Other: _____

### 3. Indicate procedure or remedy, if applicable (may select more than 1):

[ ] Appeal from Municipal or Justice Court
[ ] Arbitration-related
[ ] Attachment
[ ] Bill of Review
[ ] Certiorari
[ ] Class Action
[X] Declaratory Judgment
[ ] Garnishment
[ ] Interpleader
[ ] License
[ ] Mandamus
[ ] Post-judgment
[ ] Prejudgment Remedy
[ ] Protective Order
[ ] Receiver
[ ] Sequestration
[ ] Temporary Restraining Order/Injunction
[ ] Turnover

### 4. Indicate damages sought (do not select if it is a family law case):

[ ] Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
[ ] Less than $100,000 and non-monetary relief
[ ] Over $100,000 but not more than $200,000
[ ] Over $200,000 but not more than $1,000,000
[X] Over $1,000,000

Rev 2/13